No. 17-5236

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

───────────────

ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D.,
Plaintiff-Appellee,

v.

ERIC HARGAN, Acting Secretary of Health and Human Services, et al.
Defendant-Appellant.

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

───────────────

**APPELLANTS' RESPONSE TO APPELLEE'S PETITION FOR REHEARING EN BANC**

───────────────

CHAD A. READLER
  *Acting Assistant Attorney*
  *General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

CATHERINE H. DORSEY
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice, Room 7236*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

This Court should deny the *en banc* petition. Although the parties vigorously dispute whether the government must facilitate Ms. Doe's access to an elective abortion while in HHS custody, particularly given that Ms. Doe could request voluntary departure and thereby be released from custody, *en banc* review is not warranted. This Court's emergency order gives the government until October 31 to find a sponsor. At that time, if a sponsor has been identified and Ms. Doe released, her undue burden claim would be rendered moot. If no sponsor is identified and Ms. Doe still remains in custody, the district court may enter injunctive relief and this Court could review the question then. It is highly unlikely that the *en banc* Court could consider and grant the petition and then rule on the merits before October 31, such that *en banc* review now would make any difference to plaintiff. Regardless, there is no reason for extraordinary *en banc* expedition because the Court could wait to see what happens on October 31, and decide then whether to grant the rehearing petition—a prudent course that could avoid rendering a decision on difficult constitutional issues.

In any event, the panel decision is not contrary to Supreme Court precedent and does not otherwise meet the criteria for *en banc* review. There is no precedent that supports Ms. Doe's assertion that by illegally entering the United States and choosing to remain in custody rather than return home, the government must facilitate her access to abortion in order to avoid placing an "undue burden." And to the extent Ms. Doe argues that opting for voluntary departure is itself an "undue burden" because it pressures her to give up pursuit of a possible avenue to staying in the

1

United States legally, the argument lacks merit and the *en banc* Court should not consider that claim given the incomplete record, as well as the fact that prior to this petition she has never asserted such a claim.

## BACKGROUND

**1.** When an unaccompanied alien minor enters the United States, HHS is normally responsible for the minor's care and custody pending completion of immigration proceedings. *See* 8 U.S.C. § 1232(b)(1). HHS exercises this responsibility through its Office of Refugee Resettlement, which contracts with various private entities that operate shelters and detention centers for these minors. *See generally*, HHS, Office of Refugee Resettlement, *Children Entering the United States Unaccompanied: Section 1*, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.1.

Generally, HHS will work to identify an adult sponsor to whom the minor can be released, with preference given to the minor's relatives within the United States (if any), but non-relatives can qualify to be sponsors. *See* 8 U.S.C. § 1232(c)(3); HHS, Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 2, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2; White Dec. at 4.[1] Sponsors can only be eligible if HHS first determines that they are "capable of providing for the child's physical and

---

[1] The White, Doe, and Amiri declaration were exhibits to the government's emergency stay motion.

2

mental well-being," which must "include verification of the [sponsor's] identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." 8 U.S.C. § 1232(c)(3)(A). In some circumstances, HHS will also conduct a home study. *Id.* § 1232(c)(3)(B). If no sponsor is found, and the minor does not voluntarily depart the country (*see* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26), the minor normally remains in an HHS-contracted facility.

**2.** Jane Doe is seventeen. Doe Dec. In early September 2017, she was apprehended as an unaccompanied minor who entered the United States without authorization, and she thereafter entered HHS custody. White Dec. 2. She is currently cared for by a federal grantee at a shelter in Texas. White Dec. 2.

Following her arrival, Ms. Doe was given a medical examination, after which she was informed that she was pregnant. White Dec. 2. Ms. Doe also specifically reported that she experienced no abuse in her home country and had a strong relationship with her parents. Shelter staff promptly pursued information Ms. Doe provided about potential sponsors, with two potential sponsors declining to apply. Upon being informed of this, Ms. Doe indicated to shelter staff that she wished to return to her country of origin. Sealed White Decl.[2] Ms. Doe requested an abortion, which under Texas law cannot be provided to a minor absent parental consent or a

---

[2] The government is filing today a sealed declaration ("Sealed White Decl.") in the district court.

3

judicial bypass.  White Dec. 2; Complaint 4.  On September 25th, a Texas state court granted Ms. Doe a bypass, and also appointed a guardian ad litem and an attorney ad litem.  Amiri Dec. 1.

For every minor in HHS custody, the agency retains responsibility to ensure that the minor's interests are considered in decision-making about her care.  In carrying out that duty, the Director of the HHS Office of Refugee Resettlement evaluates the minor's request for an abortion.  White Dec. 3.  In Ms. Doe's case, the Director declined to permit Ms. Doe to leave her shelter for purposes of obtaining the abortion (or for purposes of attending a state-mandated counseling session in advance of the planned abortion).  White Dec. 2; Amiri Dec. 2.

As the Office of Refugee Resettlement's Deputy Director for Children's Programs explained in his declaration, granting authorization for Ms. Doe to attend such appointments would entail facilitating an abortion.  Even if HHS or the shelter did not transport Ms. Doe to the abortion clinic, approval would still require that HHS or its contractor devote time and staff towards maintaining appropriate custody over Ms. Doe during her absence; would require staff to stay abreast of Ms. Doe's health and evaluate the propriety of her proposed procedure; would entail work by government staff to draft and execute approval documents and provide direction to the shelter on its role in connection with the procedure; and would require that HHS expend resources to monitor Ms. Doe's health during and immediately after the abortion.  White Dec. 3.

4

**3.**  Ms. Doe brought several different lawsuits.  First, on October 5, 2017, she filed a state habeas lawsuit, in Texas state court, directed at the shelter and some of its employees; she sought to force them to release her for a scheduled abortion.  *In re Jane Doe*, No. 2017-DLL-06644 (107th Jud. Dist.).  On October 8, that action was removed to the Southern District of Texas.  *In re Jane Doe v. International Educational Services (I.E.S.), Inc.*, 1:17-cv-00211 (S.D. Tex).  On October 18, 2017, that court issued an order giving "full faith and credit" to the TRO at issue here, and abated the action until further notice.

Also on October 5th, Ms. Doe attempted to join an existing lawsuit in the Northern District of California that had been filed over a year earlier by an organizational plaintiff, and which had (solely) brought an Establishment Clause challenge to HHS's practice of contracting with some religiously affiliated shelters.  *ACLU of Northern California v. Wright*, No. 3:16-cv-03539-LB, Dkt. Nos. 1, 57, 82 (N.D. Cal.).  Ms. Doe, who is not in a religiously affiliated shelter, proposed asserting a number of additional claims—including a Fifth Amendment claim—and simultaneously sought a TRO that would have permitted her to obtain an abortion.  *Id.*, Dkt. Nos. 82, 84.  The district court denied the TRO, explaining that (among other reasons) venue was improper in the Northern District of California.  *See* Appellants' Emergency Motion For Stay at 6-7.

Ms. Doe filed the instant lawsuit, via her guardian ad litem, on October 13th.  Compl 11.  She sought a TRO on several claims, including a claim that HHS was

5

violating her Fifth Amendment rights by allegedly blocking her access to an abortion. Doc. No. 1-10.³ In none of her previously filed papers—in any of these three actions—did Ms. Doe suggest that she had a claim to remain in this country. Rather, the assertion that she now makes – that she has a claim for special immigrant juvenile status – is made for the first time in her rehearing petition.

The government opposed the requested TRO, pointing out that Ms. Doe had the option of both finding a sponsor or obtaining voluntary departure, and so HHS has not imposed an undue burden on any abortion right. Doe's reply (like her TRO motion) did not include any argument for why the sponsorship avenue was insufficient, other than to briefly assert that "the Constitution does not permit the government to penalize J.D. for seeking to exercise her right to an abortion by forcing her to give up her opportunity to be reunited with family here in the United States." Doc. No. 15 at 6.

Following an emergency hearing on October 18th, the district court granted the TRO and ordered the government to transport Ms. Doe (or allow her guardian ad litem or attorney ad litem to transport her) to the nearest abortion provider for counseling and an abortion. DC Ct. Order at 1-2. Without citing supporting evidence, the court also found that if a TRO were not granted Ms. Doe would suffer irreparable harm.

---

³ Ms. Doe also sought and obtained a TRO on two other claims. The government has not sought further review on those claims.

6

The government immediately filed a notice of appeal and filed an emergency motion for stay pending appeal. Ms. Doe filed a response the next day (to which the government replied several hours later), and a panel of the Court heard oral argument on the morning of Friday, October 20.[4]

Later that day, this Court issued a brief *per curiam* order vacating portions of the TRO insofar as it required HHS to transport Ms. Doe (or allow her to be transported) to either pre-abortion counseling or an abortion appointment. The order recognized that if Ms. Doe secured a sponsor she would be able to lawfully obtain an abortion on her own. The Court explained that "so long as the process of securing a sponsor to whom the minor is released occurs expeditiously," the government was correct in contending that it had not unduly burdened Ms. Doe's rights. The order further directed the district court to allow HHS until 5pm on Tuesday, October 31, 2017, to secure a sponsor. If Ms. Doe were not released to a sponsor by that time, the district court could re-enter the TRO (or impose another appropriate order) and either side could appeal. Panel Order 1-2.

Judge Henderson indicated that she concurred in the order, with her reasoning to come within five days. Judge Millett dissented.

**4.** Ms. Doe filed an emergency petition for rehearing *en banc* and an emergency motion to recall the mandate. Ms. Doe filed two new declarations in the district

---

[4] On the 19th, the panel issued a temporary administrative stay of the TRO portion requiring that Ms. Doe be made available for an abortion.

7

court. One provided significant new detail on the declarant's understanding of HHS's process for securing a sponsor. The other was filed under seal; Ms. Doe's *en banc* petition describes it as supporting the assertion that she "has a substantial claim for special immigrant juvenile status . . . based on" past parental abuse.

## DISCUSSION

Ms. Doe asks this Court to take the extraordinary step of reviewing *en banc*, on an exceptionally expedited basis, an emergency order that by its own terms can only last for another eight days (if Doe does not secure a sponsor during that time). Moreover, it asks the Court do so in order to consider new evidence that was never evaluated by the district court, and that the government must address literally overnight at a time when it is unable to fully engage in consultation with the appropriate agency officials. The panel's order is not contrary to Supreme Court precedent, and does not otherwise meet the criteria for *en banc* review (let alone on such an extraordinary timeline). The petition should be denied.

**1.** Ms. Doe suggests that the outcome of this case is plainly controlled by contrary Supreme Court precedent. That is not so.

There is no precedent, Supreme Court or otherwise, that addresses the issue of whether, if the federal government refuses to facilitate a pregnant unaccompanied minor's access to abortion while she is in federal custody by virtue of her illegal entry into the United States, that constitutes an "undue burden" on any right to abortion within the meaning of *Casey*—particularly given that the minor has the option of

8

voluntarily departing the United States and thereby ending her custody. In other words, any alleged "obstacle" to Ms. Doe's ability to obtain an abortion is by her own choice: she is in federal custody because she entered the United States illegally, and that custody is what she contends is blocking her ability to obtain an abortion. But Ms. Doe may elect voluntary departure to end her federal custody, which would eliminate the alleged "restriction" or "obstacle" of which she complains. There is no precedent suggesting that such a self-imposed obstacle, as opposed to a *government-*imposed obstacle, can constitute an "undue burden." *See, e,g., Harris v. McRae*, 448 U.S. 297, 315 (1980) (explaining that Hyde Amendment "places no governmental obstacle in the path of a woman who chooses to terminate her pregnancy, but rather, … encourages alternative activity"); *id.* ("although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation"); *Webster v. Reproductive Health Services*, 492 U.S. 490, 509 (1989) (state's refusal to permit public facilities and staff to be used for abortions "'place[d] no governmental obstacle in the path of a woman'" because it "leaves a pregnant woman with the same choices as if the State had chosen not to operate any public hospitals at all").

Furthermore, even assuming Ms. Doe has a viable immigration law claim that could potentially result in remaining in the United States legally, there is no precedent, Supreme Court or otherwise, establishing that putting her to the choice of pursuing that potential benefit or pursuing an abortion constitutes an "undue burden." This is

9

*not* a case where the government is conditioning the exercise of a constitutional right on the surrender of other legal *rights*. Ms. Doe does not currently have a legal right (constitutional or statutory) to stay in the United States. And even if Ms. Doe attained SIJ status, this would "only entitle [her] to apply for permanent status" because the actual status itself "is both discretionary and conditioned." *Gao v. Jenifer*, 185 F.3d 548, 554-55 (6th Cir. 1999); *see also* 8 U.S.C. § 1255(a). The cases cited by plaintiff (Pet. at 11), therefore, are inapposite.

The presence of the voluntary departure option also distinguishes this case from the prison context in which government entities incarcerating individuals provide access to abortion; if those entities did not provide access, the inmates would have no means to obtain one. *See, e.g., Roe v. Crawford*, 514 F.3d 789 (8th Cir. 2008). Here, there is no similar, government-imposed prohibition on abortion; the only alleged government obstacle is custody, that Ms. Doe may end at any time by filing a request for voluntary departure. Thus, this is *not* a case of the *government* "completely block[ing]" access to an abortion as plaintiff claims (Pet. at 1.).

Indeed, ample case law recognizes that the government need not facilitate access to abortion; it need not provide funding or "commit any resources to facilitating abortions." *Webster*, 492 U.S. at 511. And the government may legitimately express a preference for childbirth over abortion, even if such a preference may have practical effects or limits on a woman's exercise of her right to an abortion. For example, in *Webster*, 492 U.S. at 509-10, the Court recognized that a

10

state's restriction on the use of public facilities and employees in performing abortions would "restrict a woman's ability to obtain an abortion to the extent that she chooses to use a physician affiliated with a public hospital," but nevertheless upheld the restriction, explaining that it "leaves a pregnant woman with the same choices as if the State had chosen not to operate any public hospitals at all."

Here, the government has not issued any restriction limiting the right to abortion, as the State did in *Webster*. But even if federal custody, by virtue of Ms. Doe's illegal immigration status were considered such a restriction, Ms. Doe can render that restriction a nullity by filing for voluntary departure. As in *Webster*, then, she would be left with the same choices as if she had never been in federal custody. And in those circumstances, no one disputes that the federal government would not have any obligation to facilitate an abortion for Ms. Doe.

Even if Ms. Doe may belatedly raise a valid claim that she could raise in immigration proceedings, the results should not change. Ms. Doe asserts that the government is burdening her right to an abortion by conditioning her right to obtain one on her giving up a potential immigration *benefit*. But again, that is not a burden the government has placed on her. Ms. Doe arrived here illegally and refuses to leave. She has put herself to a difficult choice. And if the federal government has to approve, assist, and be complicit in Ms. Doe's abortion, the government's interest in avoiding that facilitation outweighs any alleged "burden" she has created for herself. Even if, in this particular case, facilitation does not require the government to pay for

11

and transport Ms. Doe for an abortion, that does not alter the analysis; her argument would nevertheless require the federal government to be complicit in her abortion, which the government has a significant and legitimate interest in refusing to do. *See, e.g., Gonzales v. Carhart*, 550 U.S. 124, 145, 157, 163 (2007) ("the government has a legitimate and substantial interest in preserving and promoting fetal life"); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992) (joint opinion of O'Conner, Kennedy, and Souter, JJ.) ("The government may use its voice and its regulatory authority to show its profound respect for the life within the woman."). Choosing between a potential governmental benefit and an abortion is not an undue burden imposed by the government, especially when concluding in the alternative would force the government to facilitate abortions. which is contrary to longstanding precedent, such as *Maher, Harris*, and *Webster*.

    **2.** *En banc* review is inappropriate at this interlocutory stage of the case. Because of the extremely expedited nature of the proceedings, very little information is currently in the record regarding how quickly HHS could be able to secure a sponsor, precisely what that obligation entails, and exactly who would be eligible. And the preliminary nature of that record is exacerbated by the fact that Ms. Doe has attempted to supplement the record with two new declarations that the government has not had a sufficient chance to review in any detail with the relevant agencies (the declarations were filed at 10pm on Sunday, with the government ordered to respond to the petition by 11am the following morning). *En banc* review is premature.

12

That point is reinforced, moreover, by the fact that Ms. Doe's new declarations may be subject to dispute. In particular, the Carey declaration asserts that HHS "does not allow individuals without a prior relationship to the minor and/or the minor's family to act as a sponsor." *See* Carey Dec. Pet. 8-9; *see also* Pet. 8-9. HHS's website, however, says otherwise. *See* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2 (explaining that potential sponsors include unrelated individuals "designated by the [minor's] parent or legal guardian;" "a licensed program willing to accept legal custody;" and "an adult individual or entity seeking custody when it appears that there is no other likely alternative to long term ORR care and custody"). Moreover, since Friday HHS has received inquiries from prospective sponsors. *See* Sealed White Decl. The panel's order remanding the case to the district court, until October 31 at 5 pm if a sponsor has not yet been secured for Ms. Doe, appears designed to allow just such factual disputes to be resolved.

Nor has Ms. Doe adequately explained why time is of such an essence that *en banc* review is needed now on such an incomplete record, rather than her obtaining further review eight days from now (if no sponsor is found). By her own admission, Doe is still a number of weeks away from Texas's 20-week limit on abortions. *See* Appellee's Stay Opp. at 8-9. She does suggest that delay may put her past 15.6 weeks (the limit for the doctor available this week at her closest abortion facility), which would require additional travel time to enable her to go to a different clinic. *Id.*; *see*

13

*also* Pet. 4-5. But she does not identify when she will be past the 15.6-week mark, and given the time required before the *en banc* Court could hear and decide the case, it is doubtful that even expedited *en banc* consideration would make a difference in this regard. Furthermore, while Ms. Doe cites a medical journal article for the proposition that additional delay increases health risks, Ms. Doe herself has acknowledged that even second trimester abortions are still "very safe." *Id.*; *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2311 (2016); *Gonzales*, 550 U.S. at 164 (discussing how second trimester abortions have very low rates of complications).

*En banc* review is also not the vehicle to consider, in the first instance, Ms. Doe's new assertion that she may have a claim for special immigrant juvenile status. As an initial matter, the government is aware of potential factual bases to question some of the facts that she now points to in potential support for such a claim. For instance, we are informed by HHS that Ms. Doe has at times suggested a desire to return to her home country. Regardless, during this litigation the government has repeatedly argued that Ms. Doe can leave federal custody by electing voluntary departure; not until now—in a petition for rehearing *en banc*—has Ms. Doe ever suggested that voluntary departure would entail giving up a potential claim to eventual legal status, despite the fact that any history of familial abuse would have been known by her before she entered the country. *Cf. Texas v. United States*, 798 F.3d 1108, 1115 (D.C. Cir. 2015) (explaining that this Court is "a court of review, not one of first

14

view," and so even at the panel stage this Court "rarely entertain[s] arguments on appeal that were not first presented to the district court").

## CONCLUSION

For the foregoing reasons, the petition for rehearing *en banc* should be denied.

Respectfully submitted,

CHAD A. READLER
  *Acting Assistant Attorney*
    *General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

 S/CATHERINE H. DORSEY
CATHERINE H. DORSEY
*Attorney, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*

15

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2017, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. All participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. In addition, the following counsel for appellee was served by e-mail (by consent):

Arthur B. Spitzer
Brigitte Amiri
Scott Michelman
Daniel Mach
American Civil Liberties Union of the District of Columbia
aspitzer@acludc.org
bamiri@aclu.org

s/ Catherine H. Dorsey
Catherine H. Dorsey

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the Court's order because it contains 3,706 words. This response complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

s/ Catherine H. Dorsey
Catherine H. Dorsey
