Oral Argument On Emergency Motion To Stay Held October 20, 2017

**17-5236**

# United States Court of Appeals
# for the District of Columbia Circuit

ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated,

*Plaintiff-Appellee,*

v.

ERIC D. HARGAN, Acting Secretary, Health and Human Services; STEPHEN WAGNER, Acting Assistant Secretary, Administration for Children and Families; SCOTT LLOYD, Director, Office of Refugee Resettlement,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**CORRECTED BRIEF FOR AMICI CURIAE STATES OF NEW YORK, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, IOWA, MAINE, MASSACHUSETTS, OREGON, PENNSYLVANIA, VERMONT, and WASHINGTON, and the DISTRICT OF COLUMBIA IN SUPPORT OF APPELLEE'S MOTION FOR REHEARING EN BANC**

|  |  |
|---|---|
|  | ERIC T. SCHNEIDERMAN |
|  | *Attorney General* |
| BARBARA D. UNDERWOOD | *State of New York* |
| *Solicitor General* | 120 Broadway, 25th Floor |
| ANISHA S. DASGUPTA | New York, NY 10271 |
| *Deputy Solicitor General* | (212) 416-6279 |
| ESTER MURDUKHAYEVA |  |
| *Assistant Solicitor General* |  |
| *of Counsel* | Dated: October 24, 2017 |

(*Counsel listing coninues on inside front cover*)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTERESTS OF AMICI CURIAE .......................................................... 1

INTRODUCTION ................................................................................ 2

ARGUMENT ....................................................................................... 6

POINT I

THE GOVERNMENT'S POLICY REQUIRING AN AGENCY DIRECTOR'S APPROVAL OF ALL ABORTIONS VIOLATES FEDERALISM PRINCIPLES ........ 6

POINT II

THE GOVERNMENT'S POLICY BLOCKING DETAINED UNACCOMPANIED IMMIGRANT MINORS FROM OBTAINING ABORTIONS VIOLATES CLEARLY ESTABLISHED LAW ................................ 8

CONCLUSION ................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Ankenbrandt v. Richards,*
    504 U.S. 689 (1992) .................................................................................. 7

\* *Bellotti v. Baird,*
    443 U.S. 622 (1979) .............................................................................. 9, 10

*Lambert v. Wicklund,*
    520 U.S. 292 (1997) ................................................................................ 10

*Lehr v. Robertson,*
    463 U.S. 248 (1983) .................................................................................. 7

\* *Planned Parenthood of Southeastern Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ......................................................................... 8, 9, 10

*Whole Woman's Health v. Hellerstedt,*
    136 S. Ct. 2292 (2016) .............................................................................. 8

**Laws & Rules**

Tex. Fam. Code § 33.003(h) ........................................................................ 12

Texas Rules and Forms for a Judicial Bypass of the Parental
    Notice and Consent under Chapter 33 of the Family Code

    Rule 1.4(a) ............................................................................................. 11
    Rule 2.3(a-b) ......................................................................................... 11
    Rule 2.5(f) ............................................................................................. 12
    Rule 3.3 ................................................................................................. 12

**Miscellaneous Authorities**

Guttmacher Institute, An Overview of Minors' Consent Law
    as of October 1, 2017, *at*
    https://www.guttmacher.org/state-policy/explore/overview-
    minors-consent-law ................................................................................. 6

---

\*Authorities upon which we chiefly rely are marked with asterisks.

## INTERESTS OF AMICI CURIAE

Amici curiae are the States of New York, California, Connecticut, Delaware, Hawai'i, Illinois, Iowa, Maine, Massachusetts, Oregon, Pennsylvania, Vermont, and Washington, and the District of Columbia. Amici are committed to advancing their interest in the safety of all women seeking abortion services without creating unwarranted obstacles to women's access to those services. Amici may have reached different conclusions regarding the precise balance that should be struck between maintaining the State's interest in the health and welfare of minors and maintaining access to abortion services for those minors. But they share the goal of striking an appropriate balance between these fundamental concerns.

Amici also have an interest in ensuring that courts afford the proper degree of deference to their legislative and judicial judgments regarding the best interests of minor children. It is well established that questions of family law, including determinations about the health and safety of minors, are within the province of state law. As a general matter, the States' judgments regarding standards for protecting the best interests of minors should be accorded substantial deference. The same

is true for States' determinations regarding the ability of minors to make independent decisions regarding their health and well-being in consultation with medical professionals. Permitting the federal government to unilaterally substitute its policy judgment for the determinations of state legislatures and courts—as well as for the independent decision-making of the minor residents of those States—undermines both federalism interests and individual constitutional rights.

## INTRODUCTION

This case involves the application of well-established legal principles to extraordinary facts. Rehearing is warranted because the panel's decision irreparably harms movant J.D., a seventeen-year-old unaccompanied minor immigrant in federal custody, who is fifteen weeks pregnant and is seeking to exercise her constitutional right to obtain an abortion. A Texas state court judge has already determined that J.D. is capable of making the decision to terminate her pregnancy. And J.D. has reiterated that she wants an abortion, despite extensive efforts by the federal government to convince her to proceed with the pregnancy. Nevertheless, the federal government insists that it is entitled to supersede J.D.'s decision *and* the state court's determination, and it

refuses to permit J.D. to obtain a lawful abortion. The panel's determination that this policy is not an undue burden so long as J.D. can hypothetically be released to a sponsor by October 31, conflicts with basic principles of federalism and is incorrect as a matter of law.

The government admits that it has adopted a policy which requires defendant Scott Lloyd, the Director of the Office for Refugee Resettlement (ORR), an office within the Department of Health and Human Services (HHS), to personally review and approve all requests for medical abortions made by unaccompanied immigrant minors who are in United States custody and are residing in a federally funded shelter. (White Decl. ¶ 12 (District Court Dkt. No 10-1).) The Director has, in turn, adopted a policy that forbids a shelter from taking an unaccompanied minor to a doctor who will provide abortion services, and only authorizes a shelter to transfer an unaccompanied minor to a doctor who will provide "pregnancy services and life-affirming options counseling." (Amiri Decl., Ex. C (Dist. Ct. Dkt. No. 3-7).) This new policy applies nationwide to all unaccompanied immigrant minors who are in the custody of the United States government, including minors who are in custody in the amici States.

3

The government concedes, at least for purposes of this litigation, that unaccompanied minor immigrants in United States custody have the constitutional right to obtain an abortion. (Panel Decision at 2; Oral Arg. at 17:35-18:50.) Nevertheless, the government insists that it can require those minors to obtain the consent of a federal agency director prior to receiving abortion services. (Gov't Opp'n to Mot. for a Temporary Restraining Order (Dist. Ct. Dkt. No. 10) at 4.) The government further maintains that it can lawfully adopt a policy to withhold consent to all requests for abortion services, absent evidence of sexual abuse or medical necessity. (Oral Arg. at 20:14-20:29, 22:00-22:30.) Both propositions are false.

First, the United States cannot impose a federal agency-consent requirement that does not exist under state law without infringing upon the sovereignty of those States that have decided to trust the independent judgment of minors who wish to exercise their constitutional right to obtain an abortion. The government's new policy also infringes upon the sovereignty of those States that impose parental consent and notification requirements and have adopted judicial bypass procedures by which a minor can obtain a state court determination that she is mature enough

4

to make the decision to obtain an abortion. The government's policy undermines state court determinations made pursuant to those judicial bypass procedures by refusing to give them full faith and credit, and by imposing additional layers of consent not required by state law, as has happened in this case.

Second, the government's policy of withholding its consent to all requests for abortions, except in instances of sexual abuse and medical necessity, constitutes an undue burden on the constitutional rights of unaccompanied immigrant minors, including the movant. The panel's conclusion that the policy is not an undue burden "so long as the process of securing a sponsor to whom the minor is released occurs expeditiously" (Panel Decision at 1), incorrectly assumes that the availability of release to a hypothetical sponsor is equivalent to the expeditious judicial bypass procedures available in states that impose parental consent requirements. However, the government's policies and regulations governing release to a suitable sponsor are markedly different from the judicial bypass procedures that are required in order for parental consent statutes to pass constitutional muster. Thus, the availability of release

to a hypothetical sponsor does not cure the undue burden created by the government's new policy.

## ARGUMENT

### POINT I

#### THE GOVERNMENT'S POLICY REQUIRING AN AGENCY DIRECTOR'S APPROVAL OF ALL ABORTIONS VIOLATES FEDERALISM PRINCIPLES

More than a dozen States, including amici New York, California, Connecticut, Hawai'i, Maine, Oregon, Vermont, and Washington, and the District of Columbia, do not require minors to notify their parents or to obtain parental consent prior to receiving abortion services. *See* Guttmacher Institute, An Overview of Minors' Consent Law as of October 1, 2017.[1] These states have concluded that minors are entitled to a broad range of confidential family planning services and reproductive care, including abortion services, without parental intervention. These States have further concluded that minors are sufficiently mature to make the decision to terminate a pregnancy following consultation with a doctor. The federal government, disregarding the traditional prerogatives of the

---

[1] https://www.guttmacher.org/state-policy/explore/overview-minors-consent-law

States over family matters and the specific determinations that different states have made, has adopted a national policy requiring federal agency approval of all abortion requests made by unaccompanied minor immigrants, including unaccompanied minor immigrants residing in those States that do not otherwise impose consent or notification requirements.

This policy plainly violates federalism principles. It is well established that—as with all issues of domestic and family relations—the standards for determining the best interests of children are governed by state law. *See Lehr v. Robertson*, 463 U.S. 248, 256-57 (1983); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 694-95 (1992). This case involves state law determinations about whether and when a minor can consent to medical services without the involvement of her parents, and whether certain medical procedures are in the best interests of a child. This is not a case in which state procedures are alleged to be in violation of any federal right—to the contrary, the state procedures here are consistent with decades of well-established federal requirements.

The government's policy also undermines the bypass procedures implemented by those states that *do* require parental consent by refusing

to give full faith and credit to the judicial determinations made as a result of those procedures. Here, J.D. has obtained a judicial determination from a Texas state court that she is sufficiently mature to make an independent decision to terminate her pregnancy. The government's insistence that it is entitled to disregard the state court determination and to substitute its own judgment as to whether an abortion is in J.D.'s best interests is an affront both to J.D.'s constitutional rights and to Texas's sovereignty.

## POINT II

### THE GOVERNMENT'S POLICY BLOCKING DETAINED UNACCOMPANIED IMMIGRANT MINORS FROM OBTAINING ABORTIONS VIOLATES CLEARLY ESTABLISHED LAW

The undue burden standard, as set out by the Supreme Court in *Casey* and reaffirmed in *Whole Women's Health*, provides that a government policy is unconstitutional if it "place[s] a substantial obstacle in the path of a woman seeking an abortion." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 877 (1992) (joint opinion of O'Connor, Stevens, and Souter, JJ); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016). The Supreme Court has held that a State can impose a parental consent or notification requirement

8

for minors who seek to obtain an abortion, but that such a requirement could not permit an "absolute, and possibly arbitrary, veto" over the decision of a minor and her doctor to terminate a pregnancy. *Bellotti v. Baird*, 443 U.S. 622, 643 (1979).

Accordingly, the Supreme Court has required that any State imposing a parental consent or notification requirement must "provide an alternative procedure whereby authorization for the abortion can be obtained." *Id.* To pass constitutional muster, the bypass procedure must allow a pregnant minor to demonstrate either "(1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes" or "(2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." *Id.* at 643-44; *see also Casey*, 505 U.S. at 899. Further, the proceeding must ensure "anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti*, 443 U.S. at 644.

The panel's determination that the government's policy does not unduly burden J.D.'s constitutional right to an abortion is based on the erroneous conclusion that the availability of hypothetical sponsors is akin

9

to the bypass procedures contemplated by *Bellotti* and approved in *Casey*. (Panel Decision at 1; Oral Arg. at 51:05-52:20.) It is not. As an initial matter, judicial bypass procedures are constitutional because they are available to all minors. *See Casey*, 505 U.S. at 899; *Lambert v. Wicklund*, 520 U.S. 292, 295 (1997) (per curiam). By contrast, an unaccompanied minor immigrant may not have any sponsors to whom she could be released, because, as the movant explains in her petition (Pet. at 9-10; *see also* Carey Decl. ¶ 15), ORR does not generally allow individuals without a prior relationship to the minor or to the minor's family to act as a sponsor. While all minors seeking to avail themselves of the judicial bypass procedure may file an application with the appropriate state court, many unaccompanied minor immigrants will not even be able to identify a potential sponsor to whom they could be released.

Moreover, the bypass procedures were instituted in order to prevent parents from exercising an "absolute" and "arbitrary" veto over a minor's decision to terminate her pregnancy. *Bellotti*, 443 U.S. at 643. Accordingly, a bypass application requires an independent determination about the maturity of a minor, or in the alternative, about the best interests of that minor. But here, the agency that refuses to permit a

minor to obtain an abortion is the very same agency that reviews and approves release to a hypothetical sponsor. Thus, the sponsorship procedure may itself allow another opportunity for the agency to exercise an absolute and arbitrary veto over a minor's independent decision.

Finally, although judicial bypass procedures are varied, they all provide procedural protections to minors that have no analogue under the sponsorship release procedures. For example, Texas law (with which J.D. has already fully complied) requires all cases to be filed confidentially, and forbids any court officer from disclosing to anyone that the minor is or has ever been pregnant or that she ever wanted an abortion. Rules and Forms for a Judicial Bypass of the Parental Notice and Consent under Chapter 33 of the Family Code (Rule) 1.4(a). Here, the government has pointed to no regulation or guideline that would forbid such disclosure to potential sponsors, or that would forbid the government from asking potential sponsors about their views on the minor's request for an abortion. Texas also requires the court to appoint a guardian ad litem and an attorney ad litem to represent the minor at a hearing. Rule 2.3(a-b). Here, the government has not identified any

11

regulation or guideline that would provide equivalent representation to a minor in the course of the sponsorship approval process.

Most importantly, Texas requires the court to rule on a bypass application "as soon as possible" and "immediately after the hearing," Rule 2.5(f), or at a minimum, by 5:00pm on the fifth day after the application was filed, *see* Tex. Fam. Code § 33.003(h). This timeliness requirement is necessary to comply with *Bellotti*'s "expeditiousness" standard, but also takes into account the time-sensitive nature of bypass applications. Moreover, the minor has the right to an expeditious appeal if her application is denied. Rule 3.3. Here, the government has not identified any regulation or guideline that requires release to a sponsor within a certain time frame. Nor has the government identified a regulation or guideline that permits an unaccompanied minor to challenge the denial of a particular sponsor. And critically, the government has not identified any time frame after which it must cease blocking a minor's access to abortion services. To the contrary, the government maintains (Response to Pet. at 8-9) that its policy is constitutional even if a sponsor is not identified, because J.D. can

12

voluntarily depart the country.[2] Thus, even the government does not believe that the sponsorship process is equivalent to judicial bypass.

---

[2] Amici agree with the arguments raised by movant in her petition, as well as by Judge Millett's dissent, as to why the availability of voluntary departure does not remedy the undue burden caused by the government's policy.

## CONCLUSION

The petition for rehearing en banc should be granted, the panel's order should be vacated, and Defendants' emergency motion for a stay of the temporary restraining order entered by the district court should be denied.

Dated:　New York, NY
　　　　October 24, 2017

                                        Respectfully submitted,

                                        ERIC T. SCHNEIDERMAN
                                          *Attorney General*
                                          *State of New York*

                            By:　*/s/ Barbara D. Underwood*
                                        BARBARA D. UNDERWOOD
                                        Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*　　　　　　　120 Broadway, 25th Floor
ANISHA S. DASGUPTA　　　　　　New York, NY 10271
  *Deputy Solicitor General*　　　(212) 416-8020
ESTER MURDUKHAYEVA
  *Assistant Solicitor General*
    *of Counsel*

(*Counsel listing continues on next page.*)

XAVIER BECERRA
  *Attorney General*
  *State of California*
1300 I St.
Sacramento, CA 95814

GEORGE JEPSON
  *Attorney General*
  *State of Connecticut*
55 Elm St.
Hartford, CT 06106

MATTHEW P. DENN
  *Attorney General*
  *State of Delaware*
Carvel State Bldg, 6th Fl.
820 North French St.
Wilmington, DE 19801

DOUGLAS S. CHIN
  *Attorney General*
  *State of Hawai'i*
425 Queen St.
Honolulu, HI 96813

LISA MADIGAN
  *Attorney General*
  *State of Illinois*
100 W. Randolph St., 12th Fl.
Chicago, IL 60601

THOMAS J. MILLER
  *Attorney General*
  *State of Iowa*
1305 E. Walnut St.
Des Moines, IA 50319

JANET T. MILLS
  *Attorney General*
  *State of Maine*
State House Station #04333
Augusta, ME

MAURA HEALEY
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court St. N.E.
Salem, OR 97301

JOSH SHAPIRO
  *Attorney General*
  *Commonwealth of Pennsylvania*
16th Fl., Strawberry Sq.
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
  *Attorney General*
  *State of Vermont*
109 State St.
Montpelier, VT 05609

BOB FERGUSON
  *Attorney General*
  *State of Washington*
800 Fifth Ave., Ste. 2000
Seattle, WA 98104

KARL A. RACINE
  *Attorney General*
  *District of Columbia*
One Judiciary Sq.
441 4th St., N.W.
Washington, DC 20001

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rules 27 and 29 of the Federal Rules of Appellate Procedure and Local Rules, Barbara D. Underwood, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 2,375 words and complies with the type-volume limitations of Rule 29(b)(4).

    /s Barbara D. Underwood
    Barbara D. Underwood

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the accompanying Corrected Brief by using the CM/ECF system on October 24, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:　October 24, 2017
　　　　　New York, NY

　　　　　　　　　　　　　　　　　　　　　　/s/ Barbara D. Underwood